UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. l:15-cv-23199-DPG

DESA INDUSTRIES, INC. d/b/a
WORLD PATENT MARKETING,
a Delaware corporation,

    Plaintiff,

v.

MOHAMMAD ASSAF a/k/a GEORGE MONTANA
a/k/a RICK BLAKE, an individual, ADAM RUSSELL,
an individual, PATENT SERVICES USA, INC.,
a Florida corporation, GLOBAL RESOURCE BROKER, LLC,
a Delaware limited liability company,
GLOBAL RESOURCE BROKER, INC., a Delaware corporation,
and JOHN and JANE DOES, unidentified co-conspirators,

    Defendants.
_____/

MOHAMMAD ASSAF a/k/a GEORGE MONTANA
a/k/a RICK BLAKE, an individual, and PATENT SERVICES
USA, INC., a Florida corporation,

    Counter-Plaintiffs,

v.

DESA INDUSTRIES, INC. d/b/a WORLD PATENT
MARKETING, a Delaware corporation,

    Counter-Defendant,
and

JUAN RIVERA, an individual, WORLD PATENT
MARKETING, INC., a Florida Corporation, and SCOTT
COOPER, an individual,

    Third Party Defendants.
_____/

**DEFENDANTS, MOHAMMAD ASSAF AND PATENT SERVICES USA, INC.'S
MOTION AND SUPPORTING MEMORANDUM OF LAW FOR SUPPLEMENTAL**

## JURISDICTION OVER COUNTERCLAIMS AND THIRD PARTY CLAIMS, OR IN THE ALTERNATIVE, FOR ABSTENTION

Defendants, MOHAMMAD ASSAF and PATENT SERVICES USA. INC., by and through their undersigned counsel, hereby move this Honorable Court to exercise its supplemental jurisdiction pursuant to 28 U.S.C §1367 over Defendants' Counter-claims and Third Party Claims, or in the alternative, should this Court decline supplemental jurisdiction, the Defendants respectfully request that this Court abstain from exercising jurisdiction over the Plaintiff's claims that were filed in this Court.

## Factual and Procedural Background

Plaintiff, DESA INDUSTRIES (hereinafter "Desa Industries") sued, *inter alia*, Defendants MOHAMMAD ASSAF (hereinafter "Assaf") and PATENT SERVICES USA. INC (hereinafter "Patent Services") (collectively "Defendants") in these proceedings for claims of cybersquatting, defamation, unfair competition, and trademark infringement. Plaintiff and Defendants are both engaged in the similar business activities of invention development, and Plaintiff has alleged, in large part, that Defendants have improperly redirected business away from Plaintiff, have unfairly profited from Plaintiff's goodwill, and have otherwise caused injury to Plaintiff's business and reputation.

Plaintiff has strategically filed this lawsuit in retaliation for Defendants' state lawsuit against Desa Industries d/b/a World Patent Marketing, Juan Rivera (Patent Services' former employee), and World Patent Marketing, Inc. *See Patent Services USA, Inc. v. Desa Industries d/b/a World Patent Marketing, et. al., Miami Dade Circuit Court Case No. 14-015748-CA-01* (hereinafter "State Lawsuit") The State Lawsuit, initially filed on June 18, 2014 and amended on July 2, 2015, sues Desa Industries for misappropriation of trade secrets, for tortious interference with contractual and business relationships, and for defamation. The State Lawsuit sues Juan

Rivera for violation of the non-competition agreement he signed with Patent Services, and for misappropriation of trade secrets. The State Lawsuit seeks injunctive relief.

The State Lawsuit details how Juan Rivera, in conspiracy with Scott Cooper (president of Desa Industries), unlawfully used Patent Services' protected and proprietary information (business method and process, including its forms, contracts, pricing, scripts, pricing lists, methods of obtaining new customers, design and content of the website, and use of various third parties as part of the business) to create and develop the business of Desa Industries d/b/a World Patent Marketing. Once developed, Desa Industries engaged in a systematic pattern of defaming Patent Services and diverting business away from Patent Services.[1] The State Lawsuit alleges, and seeks to prove, that the business and profits of Desa Industries d/b/a World Patent Marketing are the result of the theft or the improper use of Patent Services' business model, and of underhanded tactics by Desa Industries to divert or steal potential clients from Patent Services. Disputed in the State Lawsuit is the non-compete agreement signed (and violated) by Juan Rivera. Upon information and belief, Scott Cooper and Desa Industries incentivized Juan River to violate the non-competition agreement for their own financial gain. Juan Rivera denies signing the agreement, and experts are in dispute.

Due to the backlog of the state court's docket, the parties are making slow progress, procedurally, in the State Lawsuit. Currently, evidentiary hearings are still required to be set to adjudicate Patent Services' Motion for Preliminary Injunctive Relief, and Desa Industries' pre-answer Motion to Strike. As a result, Desa Industries has strategically "raced" to this federal

---

[1] World Patent Marketing, Inc. was incorporated by Juan Rivera after Patent Services filed its State Lawsuit. Currently, Scott Cooper is the President of both World Patent Marketing, Inc. and Desa Industries d/b/a World Patent Marketing.  Upon information and belief,  Juan Rivera and Scott Cooper's incorporation of a company with a name identical to the fictitious name of Desa Industries is an attempt to fraudulently continue its business, uninterrupted, in the event the Court enters injunctive relief against Desa Industries d/b/a/ World Patent Marketing.

court rather than file its related claims in the State Lawsuit where all matters could be adjudicated together with consistent rulings. Desa Industries' forum shopping is improper because these federal proceedings arise from the same nucleus of operative fact as the State Lawsuit – the parties' business and competition dispute. In fact, Plaintiff's pendent state law claims in these federal proceedings mirror the Defendants' claims in the State Lawsuit. Plaintiff also references the State Lawsuit in its Complaint, and alleges as fact certain allegations which are in dispute in the State Lawsuit.  By way of example, Plaintiff alleges,

> Mr. Assaf has had a personal vendetta against Plaintiff since one of the Plaintiffs employees, Juan Rivera, stopped working for PSU [Patent Services] and went to work for WPM [Desa Industries]. Mr. Assaf sued WPM for violation of an employment agreement with Mr. Rivera, which Mr. Assaf forged.  Compl. ¶24

The signature on Juan Rivera's employment agreement is a disputed fact in the State Lawsuit, and there has been no evidence presented **(nor allegation made)** that Mr. Assaf was involved in any forgery.

Desa Industries' forum shopping is not only piecemealing the parties' litigation, but is creating a danger of inconsistent rulings. Desa Industries is duplicating the parties' efforts and effectively circumventing the outstanding issues currently pending in the State Lawsuit, which if adjudicated in favor of Patent Services, may preclude or alter the result in these federal proceedings.  As a result, and as further detailed below, Defendants Patent Services and Assaf move this Court to exercise its supplemental jurisdiction over Defendants' claims pled in the State Lawsuit – to be filed as counterclaims and third-party claims in these proceedings – or, in the alternative, to abstain from hearing Plaintiff's claims until such time as the State Lawsuit has been adjudicated.

## **MEMORANDUM OF LAW IN SUPPORT OF THIS COURT'S EXERCISE OF SUPPLEMENTAL JURISDICTION**

Simultaneously with the filing of this Motion, Defendants file their counter-claims against Desa Industries, and third-party claims against Juan Rivera (hereinafter "Supplemental Claims"), which parallel the claims raised in the State Lawsuit. This Court should exercise supplemental jurisdiction over these claims pursuant to 28 U.S.C §1367, because the Supplemental Claims are related to, and form part of the same case or controversy, as the claim(s) brought forth by the Plaintiff upon which this Court's original jurisdiction is based.

The statutory basis for this court's supplemental jurisdiction, as detailed in §1367, is two-fold. Parker v. Scrap Metal Processors, Inc., 468 F. 3d 733,742 (11th Cir. 2006). The Court must first determine whether it has **power** to exercise supplemental jurisdiction:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

Once the Court determines that the supplemental claims "form part of the same case or controversy" as the federal claim, the Court may, in its discretion pursuant §1367(c), still decline jurisdiction if:

**(1)** the claim raises a novel or complex issue of State law,
**(2)** the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
**(3)** the district court has dismissed all claims over which it has original jurisdiction, or
**(4)** in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Section 1367 creates a strong presumption in favor of exercise of supplemental jurisdiction. Borges v. City of West Palm Beach, 858 F. Supp. 174, 177 (S.D. Fla. 1993).

Defendants' Supplemental Claims arise from the same case or controversy as the claims before this Court, and all claims could be adjudicated by this Court. This Court should exercise its discretion and assume jurisdiction over the Supplemental Claims because none of the considerations in §1367(c) for declining jurisdiction are present in this case.

A. **Defendants' Supplemental Claims Arise from the Same Case or Controversy as Plaintiff's Claim.**

Section §1367(a) confers upon this Court the power to hear all claims which arise from the same case or controversy (the Article III standard) as the substantial federal claim that is properly before this Court. Parker, 468 F. 3d at 743. As defined by the Eleventh Circuit, a state claim arises out of the same case or controversy if the claim shares a "common nucleus of operative fact." Id. (state claims of negligence and trespass shared a common nucleus of operative fact with the substantial federal claim for violation of the Clean Water Act because all claims were based upon Defendant's operation of the junkyard). See also Geter v. Galardi South Enterprises, Inc., 43 F. Supp. 3d 1322,1329 (S.D. Fla. 2014) (counterclaim for breach of contract arose out of a common nucleus of operative fact as the federal claim under the Fair Labor Standards Act, sufficient for supplementary jurisdiction, where both claims stemmed from an employer-employee relationship and terms of the parties' contract may be dispositive of the FLSA claims).

The federal claims upon which Plaintiff relies to invoke the jurisdiction of this Court – Cybersquatting and Infringement of Unregistered Trademark, 15 U.S.C §1125 – allege that Defendants have diverted Plaintiff's business, and have attempted to benefit from Plaintiff's good will. In its federal complaint, Plaintiff references Defendants' State Lawsuit as part of Defendants' alleged wrongdoing. Respectively, in the State Lawsuit, the instant Defendants allege that the creation of Plaintiff's business, and the profits thereof, are the result of, *inter alia*,

Plaintiff's theft of Defendants' trade secrets, and further allege that Plaintiff has defamed the Defendants and tortiously interfered with their clients. The parties are alleging two sides of the same operative coin – each party alleges that the other is interfering with its business. The Plaintiff alleges, in its Complaint, that the Defendants are diverting the very business that the Defendants allege, in their Supplemental Claims, was stolen from them by the Plaintiff. These claims are, at their very essence, compulsory counterclaims that should be adjudicated in one proceeding in order to ensure the proper administration of justice and consistent results on these interlocking issues. In fact, Plaintiff could have brought these claims in the State Lawsuit. If this Court does not assume jurisdiction over Defendants' Supplemental Claim, the Defendant can nonetheless raise these issues as affirmative defenses in the federal litigation, which will result in identical litigation in this forum and the State Lawsuit. The danger of piecemeal litigation, and precluding the type of forum shopping that has been demonstrated by the Plaintiff, favors retention of this Court's jurisdiction over the Supplemental Claims.

### B. This Court Should Exercise its Discretion to Assert Jurisdiction Over Defendants' Supplemental Claims because the Conditions of Section 1367(c) are Absent from this Case.

Where supplemental claims arise from a common nucleus of operative facts, the Court should exercise jurisdiction over the claims unless it determines, in its discretion, that one of the conditions of §1367(c) is present.[2] <u>Bensman v. Citicorp Trust, N.A.</u>, 354 F. Supp. 2d 1330 (S.D. Fla. 2005) (remand denied where plaintiff's claim did not raise novel issues of state law or predominate over the federal claim to the extent that a denial of supplemental jurisdiction would be appropriate).

---

[2] (1) novel or complex issue of State law, (2) the supplemental claim substantially predominates, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. §1367(c).

The Court may decline to exercise supplemental jurisdiction where a novel issue of state law is best decided by the state court. Borges, 858 F. Supp. at 177 (interpretation and application of a unique state case pertaining to liability of government officials for publication of public information presented a novel issue of state law). Generally, however, state tort claims and breach of contract claims, are not considered to raise novel or complex issues of state law. Parker, 468 F. 3d at 743.

The Court may also decline jurisdiction where the state claims predominate over the federal claims. "A federal court will find substantial predominance when it appears that a state claim constitutes the real body of a case, to which the federal claim is only an appendage." Id. at 744. Though, predominance of state claims, by itself, is not determinative. Id. Furthermore, even if the criteria of §1367(c) are present, this Court could still exercise jurisdiction if, in its discretion, it determines that separating the claims would cause unnecessary duplication of effort by the state court. Vernon v. Medical Management Associates of Margate, Inc., 912 F. Supp. 1549 (S.D. Fla. 1996) ("Regardless of whether the labels of subsection (c)(1) and (2) may be applied to the state law claims in this lawsuit, it would be a substantial waste of judicial resources to separate out the state law claims in this action.").

Other exceptional circumstances considered by the Court when determining whether to exercise supplemental jurisdiction is judicial economy, convenience, fairness to parties, and whether all claims would be expected to be tried together. Parker, 468 F. 3d at 745-747. When evaluating these considerations, the Court will adhere to the policy behind supplemental jurisdiction –conserving judicial energy and avoiding multiplicity of litigation. Id.

This Court should exercise its discretion and assume jurisdiction over the Defendants' Supplemental Claims. The Supplemental Claims do not present novel issues of state law, but

rather raise common law claims, identical or similar to those of the Plaintiff. Nor are Defendants' Florida statute based claims (Misappropriation of Trade Secrets, Fla.Stat. §688.001, et.seq.) novel or complex. There is an abundance of Florida law pertaining to trade secret litigation, and this Court is equipped to review and adjudicate Defendants' claims in accordance with that law.

  Even if this Court determines that the parties' state claims constitute the real issue in dispute, this alone would be insufficient grounds to decline jurisdiction. This Court should also consider, and give great weight, to the danger of multiple lawsuits over claims that arise from the same nucleus of operative facts, and that, as a matter of course, would be expected to be tried together. The claims before this Court, and the Supplemental Claims over which Defendants seek jurisdiction, should be resolved in one proceeding so that the parties can have consistent rulings on inter-related issues. For example, if the Defendants prevail on their Supplemental Claims, that ruling may affect the adjudication of Plaintiff's defamation and unfair competition claims by demonstrating the instant Plaintiff's unclean hands, or that it was, in fact, the Plaintiff who engaged in unfair competition by improperly using Defendants' trade secrets.

  Also significant is the disparate pace with which the claims will proceed before this Tribunal and in the State Lawsuit. If this Court declines jurisdiction, there is a danger that the claims before this Court will be adjudicated before the long-accrued Supplemental Claims currently pending in state court, even though the result of the State Lawsuit may significantly affect the outcome in these proceedings. It would be contrary to good conscience and justice if Plaintiff was able to recover a judgment against the very business (Patent Services) from whom Plaintiff stole trade secrets while the State Lawsuit remained pending on this very issue. Therefore, in the interest of judicial economy, and fairness to all parties, this Court should exercise jurisdiction over the Defendants' Supplemental Claims.

## IN THE ALTERNATIVE, DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF ABSTENTION

Should this Court decline to exercise jurisdiction over Defendants' Supplemental Claims, Defendants move this Honorable Court, in the alternative, to abstain from exercising jurisdiction over Plaintiff's claims filed in this case until such time as the parties obtain a resolution of their dispute in the State Lawsuit.

The *Colorado River*[3] doctrine – grounded in the principles of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation" – authorizes abstention by the federal District Court where there exist parallel state and federal court proceedings. See Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976) (internal citations omitted). In Ambrosia Coal & Const. Co. v. Pages Morales, 368 F.3d 1320, 1331 (11th Cir. 2004), the Eleventh Circuit catalogued six factors that must be weighed when considering abstention under *Colorado River* and its progeny:

> "(1) whether one of the courts has assumed jurisdiction over property, (2) the inconvenience of the federal forum, (3) the potential for piecemeal litigation, (4) the order in which the fora obtained jurisdiction, (5) whether state or federal law will be applied, and (6) the adequacy of the state court to protect the parties' rights." Id.

Generally, the inquiry favors the exercise of jurisdiction, but the District Court must consider the factors flexibly and not as a "mechanical checklist." Moses, 460 U.S. at 16. "The weight to be given to any one factor may vary greatly from case to case," id., and "[n]o one factor is necessarily determinative." Colorado River, 424 U.S. at 818. However, a single factor "can be the sole motivating reason for the abstention." Moorer v. Demopolis Waterworks & Sewer Bd., 374 F.3d 994, 997 (11th Cir. 2004) In addition, the Court should also take into account two policy considerations when evaluating whether to abstain from exercising

---

[3] See Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976)

jurisdiction: 1) whether the later filed litigation is vexatious or reactive in nature, and 2) whether the concurrent cases involve a federal statute that evinces a policy favoring abstention. Rambaran, at *3.

The *Colorado River* analysis favors abstention in this matter. The first two factors of *Colorado River* – whether one of the courts has assumed jurisdiction over property, and the inconvenience of the federal forum – are inconsequential, or are neutral, to the Court's analysis. Neither this proceeding, nor the State Lawsuit, is an *in rem* action; therefore neither Court has assumed jurisdiction over any property. See Rambaran, at *3. Furthermore, both this action and the State Lawsuit are located in the same geographical area of Miami, Florida, and have the same physical proximity to witnesses and evidence. Id.

The remaining factors, however, weigh heavily in favor of abstention. The parties before this Court are engaged in parallel state and federal litigation. Should this Court decline to assert jurisdiction over Defendants' Supplemental Claims, supra, then in the interest of judicial resources and comprehensive disposition of litigation, this Court should abstain from exercising jurisdiction until the State Lawsuit has been resolved. In the absence of abstention, there is a danger of piecemeal litigation, the bulk of which (both before this Court and in the State Lawsuit) pertains to state law claims and will require the application of state law. Since the State Lawsuit was filed first, and because the State Court of Florida can adequately address all the parties' claims (including the federal claims), this Court should, respectfully, as alternative relief, abstain from exercising jurisdiction.

    **A.** **The *Colorado River* Abstention Analysis is Warranted in this Matter because the Parties are Engaged in Parallel State and Federal Litigation.**

As a threshold matter, the Court must determine whether the state and federal proceedings involve "substantially the same parties and substantially the same issues." Rambaran

v. Park Square Enterprises, Inc., 2008 WL 4371359, at *2, Case No. 6:08-cv-247-Orl-19GJK (M.D. Fla. 2008) The Eleventh Circuit in Ambrosia explicitly rejected the notion that abstention is only permissible when the state and federal cases have *identical* parties, issues, and requests for relief, reasoning that "such formalistic requirements would fly in the face of the Supreme Court's clear efforts to fashion a flexible and holistic test for applying for the *Colorado River* abstention principle." 368 F. 3d at 1329-1330. See also Brown v. Blue Cross and Blue Shield of Florida, Inc., 2011 WL 11532078, Case No. 11-80390-CIV (S.D. Fla. Aug. 8, 2011)(finding parallel litigation where both claims involved similar issues, even though parties to the federal case were not also parties to the state case), citing Dailey v. Nat'l Hickey League, 987 F. 2d 172 (3d Cir. 1993)(finding parallel actions where ERISA claims and the claims based on Canadian law revealed allegations of the same wrongdoing and sought similar relief)

      The litigation before this Court is parallel to the litigation in the State Lawsuit, even though these federal proceedings name additional parties who are not parties to the State Lawsuit; *Colorado River*, as further interpreted in Ambrosia and in Brown, does not require complete identity of parties. At its core, in both forums, Defendant, Patent Services, and Plaintiff, Desa Industries, are litigating over substantially the same issues pertaining to the parties' respective business operations, and the unfair competition in which each alleges the other has engaged. The parties are alleging reciprocal wrongdoings, and each is seeking similar relief from the other. In fact, had Plaintiff not engaged in forum shopping, Plaintiff could have brought its claims as counter-claims, and third party claims, in the State Lawsuit. Should this Court decline to assert jurisdiction over Defendants' Supplemental Claims, supra, then the *Colorado River* doctrine, as further analyzed below, authorizes this Court to abstain from

jurisdiction in this case until the parallel State Lawsuit is adjudicated so that the parties can benefit from the comprehensive disposition of litigation.

    **B. This Court is Authorized to Abstain from Exercising Jurisdiction because the Parties' Parallel Proceedings will Result in Piecemeal Litigation with Potentially Inconsistent Rulings.**

The third *Colorado River* factor considers the potential for piecemeal litigation. "The Eleventh Circuit in Amrosia has taken an extremely cautious position on this factor, emphasizing that it does not favor abstention unless the circumstances enveloping those cases will likely lead to piecemeal litigation that is abnormally excessive or deleterious." Rambaran, at *4 (internal quotations and citations omitted). The District Court will abstain from exercise of jurisdiction where the parallel state and federal lawsuits will require double the resources, two discoveries, two trials, and possibly result in two conflicting decisions based on the same evidence. Id. (internal citation omitted); Brown, at *9-10 (where a ruling in the state proceeding may resolve the issues pending in the federal case, the interest in avoiding piecemeal litigation strongly favors abstention).

    As previously detailed above, there is a significant danger of piecemeal litigation if this federal case and the parallel State Lawsuit are litigated simultaneously. Of particularly concern is Plaintiff's new allegation that Defendant, Assaf, forged the very document – Juan Rivera's non-competition agreement – which is in dispute in the State Lawsuit. There is no allegation in the State Lawsuit of forgery by Mr. Assaf, but Plaintiff cites to this as though it were a fact. Plaintiff then identifies the State Lawsuit, and the forgery therein, as the motive for the alleged wrongdoings pled in the federal complaint against the Defendants. This type of pleading opens the door not only to inconsistent rulings, but to the abuse of collateral estoppel principles.

Further, the parallel proceedings will result in double the resources. As stated above, Plaintiffs' federal suit is based on the same core facts as the State Lawsuit. In addition, should this Court deny abstention, Defendants' defenses will consist, in part, of the same allegations raised in the State Lawsuit. As a result, the parallel proceedings will result in two discoveries and two trials which will share identity of witness and evidence because the parties will seek to prove or disprove similar factual allegations.

This type of deleterious piecemeal litigation is particularly disconcerting where the resolution of the State Lawsuit might moot, or affect the outcome, of these proceedings. Should this Court decline to assert jurisdiction over Defendants' Supplemental Claims, supra, and if Defendants prevail on their claims which would remain in the State Lawsuit, Plaintiff's claims for, *inter alia*, defamation and overall damages in the instant case could be obviated in light of the adjudication in the State Lawsuit that Plaintiff is the wrong-doer. This *Colorado River* third factor, in particular, weighs heavily in favor of abstention.

### C. This Court is Authorized to Abstain from Exercising Jurisdiction because the State Court Obtained Jurisdiction Over the Parties and their Dispute One Year Prior to the Federal Lawsuit and the Parties have Engaged in Discovery and Evidentiary Proceedings.

When considering the fourth *Colorado River* factor, – the order in which the fora obtained jurisdiction –"Courts should consider its underlying policies: the avoidance of forum shopping and the problem of collateral estoppel." Rambaran, at *6, quoting Sides v. Simmons, No. 07-cv-80347, 2007 WL 3344405 (S.D. Fla. Nov. 7, 2007):

> Moreover, to permit both state and federal suits to go forward would lead to **forum shopping** by encouraging Plaintiff to simply choose a second court if he becomes unhappy with the first. Deferring jurisdiction to the court where the case was first filed protects the neutrality of the federal system and is consistent with long-standing judicial notions of issue and claim preclusion.... It would be illogical to give full faith and credit to the judgments of other courts while encouraging a race to judgment by permitting two suits involving substantially the same parties and issues to go forward. (emphasis added)

Furthermore, "when there are additional claims raised in the state court case, abstention is particularly appropriate because the state court case is more comprehensive, and the state court "can determine at one time all of the claims arising from [the] same set of facts." Id. (internal citations omitted). Brown, at *9 (findings that the history of the case creates the impression that Plaintiff filed his federal case merely seeking a "more sympathetic forum" which cannot be tolerated and which weighs heavily in favor of abstention) Furthermore, the District Court may consider the "vexatious or reactive" nature of the latter filed federal action. Sergeon v. Home Loan Center, Inc., No. 3:09-CV-01113-J-32JBT, 2010 WL 5662930 (M.D. Fla. Oct. 26, 2010)(consideration weighed heavily in favor of abstention where the federal lawsuit was filed "in reaction to the likelihood, imminence, or actual filing of the [state] mortgage foreclosure action.")

Plaintiff filed this federal lawsuit as a reaction to Defendants' State Lawsuit, and merely seeks to litigate in a more sympathetic forum, where Plaintiff might obtain a quicker resolution of claims. The instant lawsuit is an attempt to sidetrack Defendants' focus from the State Lawsuit, to exhaust Defendants' resources, and to expedite the adjudication of its claims in light of the slow progress in the State Lawsuit. However, Plaintiff's "race to judgment" should not be permitted by this Court because it offends the principles of issue and claim preclusion: The instant lawsuit and the State Lawsuit are based on substantially similar and reciprocal core issues (defamation, infringement on business, and unfair competition), which should be adjudicated in the order, and in the forum, in which they were first presented so that the parties can achieve a fair and comprehensive resolution to their claims, particularly when the adjudication of Plaintiff's wrongdoing in the State Lawsuit may alter, or moot, the claims before this Court. The

policy against forum shopping, and the risk of abuse of collateral estoppel, favors abstention of these proceedings.

> D. **This Court is Authorized to Abstain from Exercising Jurisdiction because both the State Lawsuit and this Federal Dispute Primarily Require Application of State Law, and the State Court is Suitable to Protect the Parties' Rights.**

The fifth and sixth factors of *Colorado River* pertain to the law applicable to the parties' dispute, and the State court's ability to protect the parties' rights. "While the involvement of federal law ordinarily weighs heavily in favor of the federal court exercising jurisdiction, as one district judge noted, if federal and state courts have concurrent jurisdiction over a claim, the applicable law factor becomes less significant." Rambaran, at *7;. See also, Moorer, 374 F. 3d at 997 ("The district court properly noted that although Moorer aptly pointed to subtle differences between his federal claim and that of the complaint filed by the State of Alabama in Marengo County state court regarding compliance with permit rules, Moorer as a intervening party in the Marengo County state court action had the right to present his compliance permit arguments in the state court.").

Even though Plaintiff filed two federal claims (Cybersquatting and Infringement of Unregistered Trademark, 15 U.S.C §1125), this does not preclude this Court from abstaining from jurisdiction. Plaintiff is not precluded from pursuing these claims under the concurrent jurisdiction of the State court, making this factor less significant to the Court's analysis. In a light most favorable to the Plaintiff, the fifth and sixth factors of Colorado River are neutral because both fora can appropriately decide the parties' claims, and adequately protect their rights; however, either fora must decide all claims together.

## **CONCLUSION**

Although the Defendants move for alternative relief – supplemental jurisdiction or abstention – **the presumption of jurisdiction weighs heavily in favor of this Court assuming supplemental jurisdiction over the Supplemental Claims**. Underlying these proceedings, and the State Lawsuit, is a need for a final resolution of claims – all claims. Despite the subtle differences in pleading, the parties' allegations center around a common core of facts which must be adjudicated by one tribunal. Plaintiff's claims herein are compulsory counterclaims to Defendants' State Lawsuit, and the State Lawsuit is a defense to these proceedings. Therefore, comprehensive adjudication of claims – which could only be achieved if all claims are resolved together – is necessary to ensure consistent rulings and to protect against piecemeal litigation.

However, should this Court decline to exercise its discretion to assert supplemental jurisdiction over all the parties' claims, abstention is required until such time as the State Lawsuit, which was filed over a year ago (and which may moot or alter the course of these later-filed proceedings) is resolved.

Dated on this 30th day of October, 2015.

Respectfully Submitted,

POLLACK, POLLACK & KOGAN, LLC
*Attorneys for Mohammad Assaf &*
*Patent Services USA, Inc.*
Courthouse Tower
44 West Flagler Street, Suite 2050
Miami, Florida 33130
Primary:      gary.pollack@ppkfirm.com
Primary:      brett.pollack@ppkfirm.com
Primary:      luda.kogan@ppkfirm.com
Secondary:   diosi.perez@ppkfirm.com
Secondary:   natalie.delarosa@ppkfirm.com
Tel: (305) 373-9676
Fax: (305) 373-9679

By:     */s/ Gary Pollack*
Gary W. Pollack, Esq.
Fla. Bar No. 313114
Bretton I. Pollack, Esq.
Fla. Bar No. 48793
Lyudmila Kogan, Esq.
Fla. Bar No. 69405

## CERTIFICATE OF SERVICE

I hereby certify that on October 30th, 2015, a copy of the foregoing *Motion and Supporting Memorandum of Law for Supplemental Jurisdiction over Counterclaims and Third Party Claims, or in the Alternative, for Abstention* was filed electronically.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List below, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing electronically.

Respectfully Submitted,

POLLACK, POLLACK & KOGAN, LLC
*Attorneys for Mohammad Assaf &*
*Patent Services USA, Inc.*
Courthouse Tower
44 West Flagler Street, Suite 2050
Miami, Florida 33130
Primary:       gary.pollack@ppkfirm.com
Primary:       brett.pollack@ppkfirm.com
Primary:       luda.kogan@ppkfirm.com
Secondary:   diosi.perez@ppkfirm.com
Secondary:   natalie.delarosa@ppkfirm.com
Tel: (305) 373-9676
Fax: (305) 373-9679

By:     */s/ Gary Pollack*
Gary W. Pollack, Esq.
Fla. Bar No. 313114
Bretton I. Pollack, Esq.

Fla. Bar No. 48793
Lyudmila Kogan, Esq.
Fla. Bar No. 69405

## SERVICE LIST

**Egozi and Bennett, P.A.**
*Counsel for Plaintiff*
2999 SW 191 Street, Suite 407
Telephone: (305) 931-3000
Facsimile: (305) 931-9343
**Bernard L. Egozi, Esq.**
Email: begozi@egozilaw.com
**Issac S. Lew, Esq.**
Email: ilew@egozilaw.com